UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SAMUEL SMALL,

NOT FOR PUBLICATION

                          Plaintiff,

**MEMORANDUM & ORDER**

   -against-
10-cv-1616 (CBA) (SMG)

LT. ROBERT ORTLIEB, P.O. REYMUNDO
NAVEDO, and DETECTIVE JUPITER,

                         Defendants.
-------------------------------------------------------------X
**AMON, Chief United States District Judge:**

      Plaintiff Samuel Small, pro se, filed an amended complaint on November 9, 2010,

alleging that defendants Lieutenant Robert Ortlieb, Police Officer Reymundo Navedo, and

Detective Rashida Jupiter violated his rights under 42 U.S.C. § 1983. Specifically, Small brings

claims for false arrest, excessive force, and malicious prosecution.[1] The defendants have moved

to dismiss the amended complaint in full. For the reasons set forth below, the defendants'

motion is granted, and the claims are dismissed.

## I.   BACKGROUND

      The narrative and sequence of events that Small alleges is difficult to follow, and he at

times seems to contradict himself. Moreover, his opposition to the defendants' motion to dismiss

contains additional facts that were not alleged in his amended complaint. However, as part of

this Court's duty to construe pro se pleadings liberally, the Court will take account of all the facts

contained in both Small's amended complaint and his opposition papers. See Cusamano v.

Sobek, 604 F. Supp. 2d 416, 461 (N.D.N.Y. 2009) ("the mandate to read the papers of pro se

---

[1] It is unclear from his papers whether Small intends to assert a claim for excessive force, but, for purposes of this motion, the Court has interpreted his pleadings as raising that claim. See Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000). In his opposition brief, Small has withdrawn his state law claim for assault and battery. (Pl. Opp. at ¶ 13).

litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint").

On March 5, 2006, three undercover police officers stopped Small while he was leaving his house. (Pl. Opp. ¶ 7.) The officers showed him several photographs and asked whether he recognized any of the individuals depicted. Small responded that he did not. Small was then arrested a few days later for a burglary that took place on or about January 11, 2005. (Id.)

Upon arrival at the police station, defendant Ortlieb and one of the undercover detectives brought Small into a separate room. Ortlieb told Small that he could "make [the] burglary charge disappear" if Small helped the police catch a suspect named Jimmy "Henchman" Rosemond by purchasing drugs from him. (Id.) Ortlieb said that he was the head of the Burglary Task Force, and that he had the power to make Small spend the rest of his life in jail if he chose not to cooperate. (Id. ¶ 8.) Small claims that he told Ortlieb: "[T]his burglary charge is a set-up, you are using fingerprints off of the photos the undercover detective showed me and using it to charge me with a burglary that happen[ed] over a year ago." (Id.) Nevertheless, Small agreed to help the officers. As a result, Ortlieb told Small that he would get the Assistant District Attorney to release him on his own recognizance. The officers gave Small a card with phone numbers on it and told Small to call the police officers when he was released from Riker's Island. (Id.)

A grand jury indicted Small for the January 11, 2005 burglary under Indictment No. 1772/2006. (Id. ¶¶ 2, 9.) He was released on his own recognizance five or six days later, but he did not call the officers. (Id.) Thereafter, Ortlieb and other police officers went to Small's

mother's house once or twice a week, asking to search the house for Small without a warrant. When Small called the officers to inquire about the searches, Ortlieb explained that because Small had refused to cooperate, they didn't "want [him] on the street anymore." (Id. ¶ 9.) Ortlieb also claimed that he would cause embarrassment to Small's family until Small turned himself in. Small told Ortlieb that he would turn himself in, so long as the police stopped searching his family's home. (Id. ¶ 10.)

On April 4, 2006, Small called Ortlieb to arrange a pick up at Snyder Avenue and 48th Street. (Compl. at 1; Pl. Opp. ¶ 10.) A police car arrived shortly thereafter, and Small was handcuffed and placed in the back seat. On the way to the precinct, a burglary call came over the police radio. The officer driving the car made a call on his cell phone, and when he hung up, he made a U-turn and stopped the car. Ortlieb and Navedo arrived and told Small to get out of the car. Small claims that when he refused, he was sprayed with mace and then beaten by Ortlieb and Navedo. (Pl. Opp. ¶ 10.) Small was then brought to an unknown location and told that an ambulance would arrive for him. The ambulance never came, and Small was then taken to the 67th Precinct, where he was charged with the burglary that had taken place that day. (Compl. at 1.) A week later he was indicted by a grand jury for the April 4, 2006 burglary under Indictment No. 2563/2006. (Compl. at 1; Pl. Opp. ¶ 2.) Small appears to allege that the 1772/2006 and 2563/2006 indictments were at some point consolidated for trial, and a jury eventually convicted him of the January 11, 2005 burglary (No. 1772/2006), but acquitted him for the April 4, 2006 burglary (No. 2563/2006). (Compl. at 1-2; Pl. Opp. ¶¶ 1-2.)

On April 27, 2006, while in custody at Riker's Island, Small was brought by defendant Jupiter to the 67th Precinct. The police were investigating a break-in that occurred on February

27, 2006 at the home of Kersha Ellis. (Compl. at 1-2; Pl. Opp. ¶ 11.) Jupiter took photographs

of five unknown men, and Officer Pablo DeJesus took a photograph of Small standing in front of

the holding cell. Small claims that his photograph was the only one taken with bars visible in the

background. (Id.) When initially showed a picture of just Small, Ellis told Jupiter that she did

not know if he was the individual who broke into her home. When shown the photo array of the

six men, however, Ellis picked out Small as the perpetrator. (Id.) In June 2006, Small was

charged with the February 27, 2006 burglary and indicted by a grand jury under Indictment No.

3319/06. (Compl. at 1.) In February 2010, however, Small claims that the Assistant District

Attorney requested that the court dismiss the charges under Indictment No. 3319/06 "because the

photograph of plaintiff was so prejudicial and misleading," and the court granted the request.

(Compl. at 2.)

Although the sequence of Small's arrests, convictions, and favorable terminations is

rather unclear on the present record, Small has stated in his opposition brief that he is not making

any claims related to the charges that resulted in convictions. (Pl. Opp. ¶ 1.)

## II.    STANDARD OF REVIEW FOR MOTION TO DISMISS

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007)). A complaint that contains only "labels and conclusions" or "a formulaic

recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Neither

will a complaint that contains only "naked assertion[s] without "further factual enhancement."

Id. at 557.

Iqbal identifies a "two-pronged" approach to determining the sufficiency of a complaint. 129 S. Ct. at 1950. First, courts can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Second, they can then identify whether the complaint, stripped of its conclusory pleadings, "plausibly give[s] rise to an entitlement to relief." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A court's consideration on a motion to dismiss is "limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

Where the plaintiff appears pro se, a court will construe his pleadings liberally and will interpret them "to raise the strongest arguments that they suggest." Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000). However, "[t]he duty to liberally construe a [pro se] plaintiff's complaint is not the equivalent of a duty to rewrite it." Kirk v. Heppt, 532 F. Supp. 2d 586, 590 (S.D.N.Y. 2008) (internal quotation marks and alterations omitted); see also Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) ("[T]hough we are obligated to draw the most favorable inferences that [a pro se] complaint supports, we cannot invent factual allegations that he has not pled.").

## III.    DISCUSSION

### A.  False Arrest and Excessive Force Claims

The defendants argue that Small's false arrest and excessive force claims are barred by the statute of limitations.  In response, Small argues that the applicable statute of limitations has been tolled.  For the reasons stated below, the Court finds that the claims are untimely and must be dismissed.

When determining the limitations period for § 1983 claims, courts borrow from the relevant state's general or residual statute for personal injury actions.  Owens v. Okure, 488 U.S. 235, 250 (1989).  In New York, the applicable statute of limitations is three years.  N.Y. C.P.L.R. § 214(5); see Soto v. Brooklyn Corr. Facility, 80 F.3d 34, 35 (2d Cir. 1996).  Accrual of a § 1983 claim, however, is determined by federal law.  Wallace v. Kato, 549 U.S. 384, 388 (2007); Bezerra v. County of Nassau, 846 F. Supp. 214, 218 (E.D.N.Y. 1994).  Generally, a § 1983 claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of his claim.  Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002).  In the case of a false arrest, the statute of limitations begins to run when the plaintiff becomes detained pursuant to legal process—"when, for example, he is bound over by a magistrate or arraigned on charges." Wallace, 549 U.S. at 389, 397.  In the case of excessive force, the statute of limitations begins to run on the date the force is used.  Oliver v. City of New York, 2011 WL 1674844, at *3 (E.D.N.Y. 2011).

The tolling rules applicable to § 1983 actions are also borrowed from state law, unless the relevant state provision is inconsistent with the federal policies underlying § 1983.  Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980) (citing Board of Regents v. Tomanio, 446

U.S. 478 (1980)).  New York Civil Practice Law and Rules § 208 governs the tolling of the

three-year statute of limitations provision in New York.  Section 208 allows tolling in cases

where the person entitled to commence an action is under disability because of infancy or

insanity.  N.Y. C.P.L.R. § 208.

The plaintiff bears the burden of demonstrating the appropriateness of a tolling provision.

Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000).  With respect to § 208, the plaintiff must

show that he is "unable to protect [his] legal rights because of an over-all inability to function in

society."  Seppala v. Meadowbrook Care Ctr., Inc., 292 A.D.2d 368, 368-69 (N.Y. App. Div.

2002) (quoting McCarthy v. Volkswagen of Am., 435 N.E.2d 1072 (N.Y. 1982)).  New York

courts have not given the tolling provision an expansive interpretation.  McCarthy v.

Volkswagen of Am., 435 N.E.2d 1072, 1074 (N.Y. 1982).  Relevant here, "imprisonment does

not itself acts as a toll for prisoners bringing § 1983 claims" in New York.  Venticinque v.

Brown, 2010 WL 1486449, at *2 (E.D.N.Y. 2010); see Pinaud v. County of Suffolk, 798 F.

Supp. 913, 922 (E.D.N.Y. 1992); Lee v. Port Authority of New York/New Jersey, 487 F.Supp.

88, 91 (S.D.N.Y. 1980).

Although Small's narrative is at times difficult to discern, it is clear that he is challenging

an arrest or arrests that took place sometime between April and June 2006.  (Compl. ¶¶ 1-2.)  He

also alleges that he was indicted by grand juries (and thus held pursuant to legal process) for all

the charges during that same time period.  (Compl. at 1; Pl. Opp. ¶ 2, Ex. A.)  The limitations

period therefore would have expired sometime in the spring or summer of 2009.  Small did not

file his original complaint, however, until April 6, 2010.  (See docket entry #1.)  Accordingly,

because Small's suit was commenced far more than three years after the dates he became

detained pursuant to legal process, as well as the dates any force was used, his false arrest and excessive force claims appear untimely on their face.

In opposition, Small argues only that the applicable statute of limitations should be tolled due to his imprisonment, citing to Hardin v. Straub, 490 U.S. 536 (1989). (Pl. Opp. ¶ 12). This argument fails. Hardin dealt with a Michigan state tolling provision that suspended the statute of limitations for prisoners. Id. at 540-41. As explained above, New York does not provide tolling for those who are imprisoned. Small has offered no facts or arguments indicating that he is entitled to tolling under New York law.

Accordingly, the Court concludes that Small's claims for false arrest and excessive force are barred by the statute of limitations, and they are hereby dismissed.

### B. Malicious Prosecution Claim

The defendants argue that Small's malicious prosecution claim fails because he cannot satisfy all of the required elements. For the reasons stated below, the Court agrees, and the malicious prosecution claim is dismissed.

The elements of a malicious prosecution claim pursuant to § 1983 are drawn from state law. Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003); Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003). Under New York law, the plaintiff must prove four elements: (1) the defendant initiated or continued a criminal proceeding; (2) the proceeding terminated favorably to the plaintiff; (3) there was no probable cause for the criminal charge; and (4) the defendant acted maliciously. Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004); Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).

Here, the record is not entirely clear regarding which defendant(s), if any, initiated the prosecutions of Small, and which of those prosecutions terminated favorably to him.  However, the Court concludes that, in any event, Small's claim fails on the probable cause element, and thus must be dismissed.

### 1.  Probable Cause for the Criminal Charge

The existence of probable cause is a complete defense to a claim of malicious prosecution.  Savino, 331 F.3d at 72.  Moreover, "[o]nce a suspect has been indicted… the law holds that the Grand Jury action creates a presumption of probable cause."  Rothstein v. Carriere, 373 F.3d 275, 282-83 (2d Cir. 2004); see Green v. Montgomery, 219 F.3d 52, 60 (2d Cir. 2000) (citing Marshall v. Sullivan, 105 F.3d 47, 50 (2d Cir. 1996)).  That presumption may only be rebutted "by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  Savino, 331 F.3d at 72 (quotations omitted).  The plaintiff bears the burden of proof in rebutting the presumption and may not satisfy this burden "with mere 'conjecture' and 'surmise' that his indictment was procured as a result of conduct undertaken by the defendants in bad faith."  Id.  However, "[w]here there is some indication . . . that, as to a fact crucial to the existence of probable cause, the arresting officers may have 'lied in order to secure an indictment,' and 'a jury could reasonably find that the indictment was secured through bad faith or perjury,' the presumption of probable cause created by the indictment may be overcome."  Manganiello, 612 F.3d at 162 (quoting Boyd, 336 F.3d at 77).

As noted previously, Small's own submissions indicate that all his criminal prosecutions were the result of grand jury indictments.  (See Pl. Opp. Ex. A.)  These grand jury indictments

create a presumption that the prosecutions were supported by probable cause. Moreover, Small has failed to allege any facts sufficient to rebut that presumption. In particular, he does not present any facts concerning the evidence or testimony presented to the grand jury, and he never even asserts that his indictments were secured through fraud or perjury. Small's papers do not describe any interactions between the officer defendants and the prosecuting ADA, and give no indication of what evidence was forwarded from the police to the prosecutor and might have influenced the indictment.

Although Small claims that he was charged with one of the burglaries following an allegedly misleading photo array assembled by defendant Jupiter, he never claims that the photo array was shown to the grand jury, or even that Jupiter or the identifying witness testified there. Rather, Small's narrative suggests that it was only much later, in February 2010, that the prosecuting ADA became aware of the photo array, and then moved to dismiss the charges. (Compl. at 2.) Furthermore, nothing in Small's papers suggests that Jupiter assembled the photo array in bad faith or with any dishonest purpose. In fact, Small states that it was a different officer, not named as a defendant here, who took Small's picture with the bars visible in the background. (Pl. Opp. ¶ 11.) The Court is thus unable to draw any plausible inference that the photo array played any role in the grand jury, or that, if it did, the officer defendants misrepresented any facts or evidence to the ADA in bad faith.

Finally, although Small makes passing reference to the fact that he accused the officers of planting fingerprints to implicate him in the January 11, 2005 burglary, he alleges only that he made that accusation to Ortlieb during his interrogation. (Pl. Opp. ¶ 8.) He never in fact claims that this accusation was true, or that he has any personal knowledge to that effect. Moreover,

Small's own papers indicate that he was convicted at trial of the January 11, 2005 burglary under Indictment Number 1772/2006, and that he is not bringing any malicious prosecution claims related to those charges.[2]  (Pl. Opp. ¶¶ 1-2.)  Thus, the Court concludes that his cursory, indirect reference to his fingerprints being planted does not salvage a malicious prosecution claim.

Accordingly, as Small is unable to rebut the presumption of probable cause created by the grand jury indictments, his malicious prosecution claim is dismissed.

## IV.    CONCLUSION

For the reasons stated, Small's false arrest and excessive force claims are dismissed as untimely, and his malicious prosecution claim is dismissed for failure to state a claim upon which relief may be granted.   The Clerk of Court is directed to terminate all pending motions, enter judgment, and close the case.


SO ORDERED.


_____/s/_____
Carol Bagley Amon
Chief United States District Judge

Dated:  Brooklyn, New York
            August 3, 2012

---

[2] Of course, as Small seems aware, any charges that resulted in conviction would fail on the favorable termination element of a malicious prosecution claim.  See Heck v. Humphrey, 512 U.S. 477, 484 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.").